IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALI BURGOS                          :
                                    : CIVIL ACTION
           Plaintiff                :
                                    :
      vs.                           : NO. 16-CV-6338
                                    :
TRANS UNION, LLC, et. al.,          :
                                    :
           Defendants               :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                          **May 18, 2017**

This Federal Credit Reporting Act case is presently before the Court on Motion of Defendant Credit One Bank to Compel Arbitration.

**Factual Background**

This case arose in September, 2016 when in the course of applying for a mortgage, Plaintiff Ali Burgos learned that Defendants Credit One and Midland Credit Management (to whom Credit One had transferred Plaintiff's account) had inaccurately reported her credit data to the three nationwide consumer reporting agencies - Equifax, Trans Union and Experian. Upon discovering this incorrect reporting, Plaintiff disputed the reports with Equifax, Trans Union and Experian, each of which purportedly acknowledged receipt of Plaintiff's dispute and reported the dispute to Credit One and Midland. Thereafter,

Trans Union, Equifax and Experian notified Plaintiff that the reported accounts had been "verified" and that the alleged inaccuracies within the trade lines of Credit One and Midland would not be corrected.  Plaintiff avers that she filed a second dispute with Defendants on October 2, 2016 with the same outcome.

   Plaintiff submits that the defendants were negligent and willful in their refusal to investigate and/or to employ proper procedures in investigating her disputes and to correct the inaccuracies in her credit reports with the result that the information which the defendants are continuing to disseminate concerning Plaintiff is false and misleading.  As a consequence, Plaintiff's credit score is lower than it should be, she has had to refrain from applying for additional credit and she was caused to be charged a higher interest rate on her mortgage.  Plaintiff claims that Defendants' actions violated the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.*, the Fair Debt Collections Practices Act, 15 U.S.C. §1692, *et. seq.*, and that she suffered defamation of her character.  Although each of the defendants have filed an answer to the complaint, Defendant Credit One now moves to compel this matter to arbitration on the basis of an agreement to arbitrate contained within the credit card application and the cardholder agreement issued by Credit One to Plaintiff when it mailed her the card.  Plaintiff opposes arbitration for the reason that the arbitration agreement is

substantively unconscionable.

## **Standards Governing Motions to Compel Arbitration**

The FAA requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. James v. Global Tellink Corp., No. 16-1555, 2017 U.S. App. LEXIS 5448 at *4-*5 (3d Cir. Mar. 29, 2017)(citing 9 U.S.C. §3). As articulated by the U.S. Court of Appeals for the Third Circuit in Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013), the standards to be applied to motions to compel arbitration differ depending upon the state of the existing record of the case and on what may or may not appear from the face of the complaint. According to Guidotti:

> when it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." ... (citation omitted). But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate at issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same," as Section 4 of the FAA

envisions."

Id, at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. PA. 2011) and 9 U.S.C. §4); Monfared v. St. Luke's University Health Network, 182 F. Supp. 2d 188, 190-191 (E.D. Pa. 2016).

## **Discussion**

"There is a strong federal policy in favor of arbitration, and a 'party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration.'" In re: Pharmacy Benefit Managers Antitrust Litigation, 700 F.3d 109, 116 (3d Cir. 2012)(quoting Alexander v. Anthony International, L.P., 341 F.3d 256, 263 (3d Cir. 2003)). To be sure, "[a]rbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." James, supra,(quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)). See also, AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648-649, 106 S. Ct. 1415, 1418, 89 L. Ed.2d 648 (1986)("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Hence, before a federal district court entertaining a motion to compel arbitration may order a reluctant party to arbitrate, the FAA requires the court "to

4

engage in a limited review to ensure that the dispute is arbitrable - *i.e.* that a valid agreement to arbitrate exists and that the specific dispute falls within the substantive scope of that agreement." Cuie v. Nordstrom, Civ. A. No. 05-4771, 2005 U.S. Dist. LEXIS 26698 at *6 (E.D. Pa. Nov. 4, 2005)(quoting PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)). And, in determining whether a valid arbitration agreement exists, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." James, supra,(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed.2d 985 (1995)). See also, Cuie, 2005 U.S. Dist. 26698 at *7 (quoting Spinetti v. Service Corporation, International, 324 F.3d 212, 214 (3d Cir. 2004)). Similarly, in "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" Id, at *7(quoting Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004)).

In Pennsylvania, it is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration, or mutual meeting of the minds. Walton v. Johnson, 2013 PA Super 108, 66 A.3d 782 (Pa. Super. 2013); Neyvas v. Morgan, 2007 PA Super 66, 921 A.2d 8 (Pa. Super. 2007); Jenkins v. County of Schuylkill, 441 Pa. Super. 642, 648, 658

5

A.2d 380, 383 (Pa. Super. 1995). To determine whether an agreement is enforceable then, it is incumbent upon the courts to examine: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced, and (3) whether there was consideration. <u>Jenkins</u>, 441 Pa. Super. at 650, 658 A.2d at 384.

Here, Credit One alleges[1] in the motion which is now before us that on January 5, 2010, Plaintiff accepted a written solicitation for a pre-approved credit card which Credit One had sent to her on December 28, 2009 by completing an online application. The written solicitation contained the notation: **"SEE REVERSE FOR IMPORTANT INFORMATION ON RATES, FEES, COSTS, AND AVAILABLE CREDIT."** Included among the headings on the reverse side of the solicitation was the following verbiage:

> **ARBITRATION AGREEMENT:** You and we agree that either you or we may, without the other's consent require that any dispute between you and us be submitted to mandatory, binding arbitration. A more detailed description of the Arbitration Agreement will be sent with your card.

In response to Plaintiff's online application, Credit One issued

---

[1] In support of all of the averments advanced in its Motion to Compel Arbitration, Credit One relies upon the Affidavit of Gary Harwood, its Vice President of Portfolio Services (Exhibit A) and the exhibits attached thereto, which consist of copies of a Sample Pre-Approval letter (Exhibit A-1), a screenshot of the Applicant Information completed by or for Plaintiff as part of the online application which resulted in the issuance of the credit card at issue (Exhibit A-2), a copy of the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (Exhibit A-3) which Credit One typically includes when mailing new credit cards to its customers, and copies of Credit One's monthly billing statements sent to Plaintiff (Exhibit A-4).

a credit card to Plaintiff by mail.  Included in the mailing was a copy of the *Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement,* which covers more than two pages and which begins:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.  IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

The Arbitration Agreement is extraordinarily broad in its definitions of covered claims[2] and provides in relevant part:

> Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account;
> ...

Plaintiff does not dispute the formation of a valid agreement to arbitrate and we find that the materials attached to the moving defendant's motion clearly support such a finding.

---

[2] In fact, the **Claims Covered** section of the Agreement comprise some five single-spaced paragraphs and appear at least to this Court to include every kind of claim imaginable arising in the past, present or future, between not only the parties to the card agreement but "others" as well, regardless of whether they are made as direct, cross, counter or third-party claims, or "interpleaders or otherwise."

Indeed, the written solicitation constituted an offer, which was accepted by the plaintiff's online application, and supported by the mailing to plaintiff of a credit card which she then utilized to charge several purchases. Consequently, we conclude that a valid agreement to arbitrate was in fact entered into by the parties. And, in light of the very broad definition of covered claims, it appears obvious that the instant dispute over the correctness of Credit One's reporting of Plaintiff's payment history on the card to the three nationwide credit reporting agencies falls within the confines of an arbitrable dispute. Again, Plaintiff does not appear to be contesting that the dispute upon which she bases her complaint falls within the definition of the claims subject to arbitration.

These findings do not end the inquiry however, as Plaintiff alleges that the arbitration agreement is unenforceable because it is substantively unconscionable and the unconscionable provisions are not severable. Alternatively, Plaintiff asserts that Defendant has waived its right to compel arbitration because "of its significant delay" in filing this motion.

    *1. Waiver*

"Consistent with the strong preference for arbitration in the federal courts, waiver is not to be lightly inferred and will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in

8

extensive discovery." Pharmacy Benefit Managers Antitrust Litigation, 700 F.3d at 117(quoting Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 208, 53 V.I. 901 (3d Cir. 2010)). "A court may, however, refuse to enforce an arbitration agreement where a party has acted inconsistently with the right to arbitrate." Id.; Worth v. Worth, Civ. A. No. 16-3877, 2016 U.S. Dist. LEXIS 164061 at *16 (E.D. Pa. Nov. 29, 2016). It is prejudice which "is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 231 (3d Cir. 2008). To guide the prejudice inquiry, the Third Circuit has outlined six, non-exclusive factors to be considered:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) [the] extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 451 (3d Cir. 2011); Zimmer, supra,(quoting Ehleiter v. Grape-tree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007) and Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 926-927 (3d Cir. 1992)).

In application of the foregoing, we cannot agree with Plaintiff's assertion that Credit One waived its entitlement to seek arbitration. The docket entries reflect that the Plaintiff

9

filed her Complaint commencing this lawsuit on December 6, 2016 and that it was served on Credit One on December 12, 2016. Credit One answered the Complaint on January 13, 2017 and filed the instant Motion to Compel Arbitration on March 3, 2017.  Thus far, there is no evidence that any discovery has been undertaken between the parties and it appears that the only real substantive action to have been thus far taken is Plaintiff's having stipulated to the dismissal of Defendants Trans Union and Midland Funding and the entry by this Court of a Scheduling Order directing the completion of discovery by June 7, 2017.[3] Although the record is devoid of evidence as to whether Moving Defendant informed Plaintiff of its intent to pursue arbitration prior to seeking to enjoin further proceedings, its Answer to the Complaint makes clear that it is definitely contesting the merits of Plaintiff's claims.  We therefore find that inasmuch as this case is in its infancy, Defendant was timely in its filing of this motion to compel arbitration and that Plaintiff would not suffer prejudice were this Court to direct it to arbitrate this matter at this point in the proceedings.

   2. *Substantive Unconscionability*

   As noted, Plaintiff also argues that this matter should not be referred to arbitration because the arbitration agreement at

---

[3] And, on April 24, 2017, we issued an Order staying discovery pending the issuance of a decision on this Motion to Compel Arbitration.

issue is substantively unconscionable.[4]  In so arguing, Plaintiff points to the following language in the agreement:

> ... The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail.  These procedures and rules may limit the amount of discovery available to you or us. ...
>
> **Costs:** If we file the arbitration, we will pay the initial filing fee.  If you file the arbitration, you will pay the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator.  We will reimburse you for the initial filing fee if you paid it and you prevail.  If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing.  All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law.  However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so.  Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party.

"Unconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an

---

[4] The courts have recognized that there are distinctions between "procedural" unconscionability and "substantive" unconscionability.  "Procedural unconscionability refers to 'the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.'" Zimmer, 523 F.3d at 228(quoting Harris v. Green Tree Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999)).  "Substantive unconscionability looks to whether the arbitration provision 'unreasonably favors the party asserting it.'" Id,(quoting Salley V. Option One Mortgage Corp., 592 Pa. 323, 331, 925 A.2d 115, 119 (2007)).  Here, Plaintiff is not raising procedural unconscionability as a defense, presumably because she is not challenging the entry or validity of the arbitration agreement contained within the Cardholder Agreement.

11

unfair portion of a contract.'" Harris, supra,(quoting Germantown Mfg. Co. v. Rawlinston, 341 Pa. Super. 42, 491 A.2d 138, 145 (Pa. Super. 1985)). "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." Id. In determining whether an arbitration agreement is unconscionable, state law contract principles are typically applied. Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 230 (3d Cir. 2012)(citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340, 131 S. Ct. 1740, 1746, 179 L. Ed.2d 742 (2011)). In Pennsylvania, a contract or term is unconscionable and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. Salley, supra.

Although the existence of large arbitration costs may well preclude a litigant from effectively vindicating their rights, the mere absence of a provision governing costs in an arbitration agreement is not sufficient to make the agreement unenforceable. Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 517, 148 L. Ed.2d 373 (2000); Hall v. Treasure Bay Virgin Islands Corp., No. 09-1754, 2010 U.S. App. LEXIS 5539, 371 Fed. Appx. 311, 313 (3d Cir. Mar. 16, 2011). A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of

showing the likelihood of incurring such costs" by coming forward with some evidence to show the projected fees that would apply to their specific arbitrations and showing the party's inability to pay those costs. <u>Hall</u>, <u>id</u>, (citing <u>Parilla</u>, 368 F.3d at 283-285 and <u>Alexander</u>, 341 F.3d at 268-269). Stated otherwise, "a party seeking to declare a provision awarding arbitration costs unenforceable must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration." <u>Id</u>.; <u>Monfared</u>, 182 F. Supp. 3d at 194.

In this case, Plaintiff has provided no evidentiary support for her claim that the arbitration agreement is substantively unconscionable aside from her five-sentence Declaration in which she avers that if she "is required to bear the costs of arbitration, the above-captioned action and my right to pursue the same is greatly compromised and will perhaps come to an end" and that she does "not have the financial ability to bear the costs of arbitration and [she is] of financially limited means." No further details concerning what the projected costs of the arbitration might reasonably be, what plaintiff's income is, what her living and other monthly expenses are, or any other information evincing what she means by "financially limited means" or why she would face financial hardship in the event she is compelled to arbitrate this case. Accordingly, we cannot find

13

that Ms. Burgos has met her burden of proving substantive unconscionability.

In the interests of clarity, however, and in view of the appropriate stated standard for ruling on motions to compel arbitration articulated in Guidotti as discussed above, we will grant the parties a very brief, thirty-day window in which to conduct discovery and supplement the record with regard to this issue. For this reason, this motion shall be continued for a period of thirty (30) days from the entry date of this Memorandum and accompanying Order, at the conclusion of which the parties shall have an additional period of one week to submit supplemental briefing. In the event that no filings are provided within that thirty-seven day period, this Court shall issue an Order finally disposing of this Motion to Compel Arbitration.

An order follows.